**BIRCH, Appellant,**

v.

**CUYAHOGA COUNTY PROBATE COURT et al., Appellees.**

[Cite as *Birch v. Cuyahoga Cty. Probate Court,* 173 Ohio App.3d 696, 2007-Ohio-6189.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 88854.

Decided Nov. 21, 2007.

**700**

Caryn Groedel & Associates Co., LPA, Caryn M. Groedel, Candace L. Brown, and Jennifer L. Speck; and Thomas K. Mast, for appellant.

Littler Mendelson, P.C., Robert M. Wolff, and James P. Smith, for appellee Cuyahoga County Probate Court.

Montgomery, Rennie & Jonson and Linda L. Woeber, for appellee Judge John Donnelly.

---

Per Curiam.

{¶ 1} Plaintiff-appellant, Wanda Birch, appeals the judgment of the Cuyahoga County Court of Common Pleas that granted summary judgment to defendants-appellees, the Cuyahoga County Probate Court and Judge John Donnelly. We affirm in part and reverse in part.

{¶ 2} Judge Donnelly has been the presiding judge of the probate court since 1991. In that capacity, he is responsible for the appointment and supervision of magistrates. The chief magistrate/court administrator, John Polito, provides direct supervision to the magistrates. The probate court is divided into several departments based on court function: the "front office" handles contested cases that would otherwise be heard by a probate judge, as well as the psychiatric, guardianship, adoptions, accounts, and release-of-assets departments. Magistrates are appointed to serve in a specific department of the probate court but may, at times, provide backup to other departments.

{¶ 3} Appellant was hired as a magistrate in 1993 at a starting salary of $35,000. She has worked in the release-of-assets department throughout her tenure, but has also presided over adoption and name-change matters as assigned and a limited number of front-office cases. In 1998, one of appellant's colleagues came into possession of the results of a wage study of Cuyahoga County magistrates. The documentation indicated that all female probate court magistrates were paid lower salaries than all male magistrates and that the highest paid female magistrate earned less than her lowest paid male counterpart.

Appellant, whose yearly salary was then $39,000, was the lowest paid of all magistrates employed by the probate court.

{¶ 4} After learning of the apparent salary disparities, appellant and three of her female colleagues met with Judge Donnelly and Magistrate Polito to request an explanation. Heated words were exchanged during the meeting, although witnesses disagree about precisely what was said and the context in which certain comments were made. Some wage and position changes occurred in the years following the meeting, but appellant remained the lowest paid magistrate.

{¶ 5} On July 12, 2001, appellant filed a complaint against appellees in the Federal District Court for the Northern District of Ohio, Eastern Division, alleging violations of the Equal Pay Act, 29 U.S.C. 206(d)(1) and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e–2a, premised upon wage discrimination. Appellant alleged corresponding violations of the Ohio Civil Rights Act, R.C. 4112.02. In addition, appellant asserted claims for (1) retaliation, under 42 U.S.C. 1983 and the Ohio Civil Rights Act; (2) age discrimination, in violation of the Age Discrimination in Employment Act, 29 U.S.C. 621; (3) race discrimination, in violation of Title VII and the Ohio Civil Rights Act; and (4) intentional infliction of emotional distress.

{¶ 6} The district court granted summary judgment to appellees on all claims, and appellant appealed to the United States Court of Appeals for the Sixth Circuit. On December 1, 2004, the Sixth Circuit released an opinion in which it affirmed the judgment of the district court with respect to appellant's claims for wage discrimination under Title VII and the Equal Pay Act, her race and age discrimination claims, and her claim alleging intentional infliction of emotional distress. See, generally, *Birch v. Cuyahoga Cty. Probate Court* (C.A.6, 2004), 392 F.3d 151 (*"Birch I"*). The Sixth Circuit reversed the judgment of the district court, however, with respect to appellant's claim of sex discrimination under the Ohio Civil Rights Act. On remand, the district court dismissed appellant's remaining claim without prejudice.

{¶ 7} Appellant filed a new action in the Cuyahoga County Court of Common Pleas on February 14, 2005, alleging wage-based sex discrimination in violation of the Ohio Civil Rights Act and the Ohio Fair Minimum Wage Standards Act, R.C. 4111.17. On May 10, 2005, appellant moved the trial court to "preclude defendants from filing a dispositive motion" with respect to her sex discrimination claim under the Ohio Civil Rights Act, arguing that the decision in *Birch I* precluded dispositive motions under the doctrines of collateral estoppel and the law of the case. On May 11, 2006, the trial court denied appellant's motion and granted appellees leave to file motions for summary judgment. Appellees filed a joint motion for summary judgment on June 26, 2006, and appellant responded on

July 26, 2006. The trial court granted summary judgment to appellees on September 11, 2006. This appeal followed.

## Assignment of Error

{¶ 8} "The Trial Court erred in granting Appellees' Motion for Summary Judgment with respect to Appellant's gender discrimination and Equal Pay Act claim."

{¶ 9} In her single assignment of error, appellant maintains that the trial court erred by granting summary judgment to appellees on her claim under the Ohio Fair Minimum Wage Standards Act because the trial court wrongly determined that professionals are excluded from the definition of "employees" under the act. Appellant argues that the trial court erred by granting summary judgment on her claim of wage-based sex discrimination under the Ohio Civil Rights Act because the trial court was bound by the decision of the United States Court of Appeals for the Sixth Circuit in *Birch I*. Appellant also asserts that summary judgment was inappropriate because reasonable minds could conclude that she has established a prima facie case of sex discrimination.

## Summary Judgment Standard

{¶ 10} In reviewing a trial court's ruling on a motion for summary judgment, this court applies the same standard a trial court is required to apply in the first instance: whether there were any genuine issues of material fact and whether the moving party was entitled to judgment as a matter of law. *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121. In applying this standard, evidence is construed in favor of the nonmoving party, and summary judgment is appropriate only if reasonable minds could only conclude that judgment should be entered in favor of the movant nonetheless. *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 686–687, 653 N.E.2d 1196.

{¶ 11} The moving party " 'bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims.' " *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164, quoting *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. The nonmoving party then has a reciprocal burden to set forth specific facts, by affidavit or as otherwise provided by Civ.R. 56(E), that demonstrate that there is a genuine issue for trial. *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, at ¶ 10.

## Ohio Fair Minimum Wage Standards Act

{¶ 12} R.C. 4111.17(A), which prohibits wage discrimination on the basis of race, color, religion, sex, age, national origin, or ancestry, provides:

{¶ 13} "(A) No employer, including the state and political subdivisions thereof, shall discriminate in the payment of wages on the basis of race, color, religion, sex, age, national origin, or ancestry by paying wages to any employee at a rate less than the rate at which the employer pays wages to another employee for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar conditions."

{¶ 14} The term "employees," as defined by R.C. 4111.01(D),[1] includes "any individual employed by an employer," but does not include "any individual employed * * * in a bona fide executive, administrative or professional capacity as such terms are defined by the Fair Labor Standards Act." The Fair Labor Standards Act contains a similar exception for bona fide executive, administrative, and professional employees, but specifically provides that this exception does not apply to the discrimination provisions of the Equal Pay Act. 29 U.S.C. 213(a)(1). The Ohio Revised Code does not contain a corresponding restriction.

{¶ 15} Appellant is correct in principle that case law interpreting the Equal Pay Act is used to interpret R.C. Chapter 4111. See *Creech v. Ohio Cas. Ins. Co.* (S.D.Ohio 1996), 944 F.Supp. 1347, 1353. This is only the case, however, to the extent that the terms of the statutes are consistent. See *Genaro v. Cent. Transport, Inc.* (1999), 84 Ohio St.3d 293, 298, 703 N.E.2d 782. When the terms diverge, we must apply the statute as written.

{¶ 16} Appellant does not dispute that she is a bona fide professional as defined by the Fair Labor Standards Act. Consequently, under the clear terms of R.C. 4111.01(D) she is exempt from coverage under R.C. Chapter 4111, and the trial court properly awarded summary judgment to appellees on this claim.

## Ohio Civil Rights Act

{¶ 17} Appellant also maintains that the trial court erred by awarding summary judgment to appellees on her claim of sex discrimination in violation of the Ohio Civil Rights Act. Specifically, appellant maintains that when the evidence before the trial court on appellees' motion for summary judgment is considered in the light most favorable to her, reasonable minds could conclude that she has established a prima facie case of sex discrimination.

{¶ 18} As an initial matter, we address appellant's argument that the trial court was precluded from entering summary judgment in favor of appellees by the decision of the Sixth Circuit in *Birch I*. Issue preclusion is an aspect of the doctrine of the law of the case, which provides that " 'the decision of a reviewing court in a case remains the law of that case on the legal questions

---

1. Effective April 7, 2007, this provision is found in R.C. 4111.03(D)(3)(d).

involved for all subsequent proceedings in the case at both the trial and reviewing levels.'" *Hubbard ex rel. Creed v. Sauline* (1996), 74 Ohio St.3d 402, 404, 659 N.E.2d 781, quoting *Nolan v. Nolan* (1984), 11 Ohio St.3d 1, 3, 11 OBR 1, 462 N.E.2d 410. When subsequent proceedings involve an expanded record or different legal issues, the doctrine of the law of the case does not apply. *Johnson v. Morris* (1995), 108 Ohio App.3d 343, 349, 670 N.E.2d 1023.

{¶ 19} Assuming for purposes of this opinion that issue preclusion applies when a federal case is followed by a case filed in state court, we conclude that issue preclusion does not prevent summary judgment in this case because the Sixth Circuit's opinion in *Birch I* was based on the record before it at the time—a record that has since expanded to include a second deposition of appellant and the deposition of Judge Donnelly. Nevertheless, although the trial court was not bound to reach the same conclusion as the Sixth Circuit, we agree that there are genuine issues of material fact with respect to whether appellant set forth a prima facie case of sex discrimination and whether appellees have rebutted the same.

{¶ 20} R.C. 4112.02(A) prohibits discrimination because of sex "with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Ohio courts apply federal case law interpreting Title VII of the Civil Rights Act of 1964 to claims arising under R.C. Chapter 4112 to the extent that the terms of the statutes are consistent. *Genaro*, 84 Ohio St.3d at 298, 703 N.E.2d 782, citing *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St.2d 192, 196, 20 O.O.3d 200, 421 N.E.2d 128.

{¶ 21} A plaintiff alleging sex discrimination bears the burden of setting forth a prima facie case of discrimination by either direct or circumstantial evidence. *Chang v. Univ. of Toledo* (N.D.Ohio 2007), 480 F.Supp.2d 1009, 1013, citing *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668. In order to establish a prima facie case of sex discrimination using indirect evidence, a plaintiff must demonstrate (1) that she is a member of a protected class, (2) that she was qualified for the position in question, (3) that she suffered an adverse employment action despite her qualifications, and (4) that she was treated less favorably than a similarly situated individual outside the protected class. *Barnett v. Dept. of Veterans Affairs* (C.A.6, 1998), 153 F.3d 338, 341. If the plaintiff successfully establishes a prima facie case, the employer must articulate a legitimate, nondiscriminatory justification for the employment action. *Texas Dept. of Community Affairs v. Burdine* (1981), 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207. The plaintiff may then prove, by a preponderance of the evidence, that the justification articulated by

the employer is a pretext for discrimination. Id. At all times, however, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff" remains with the plaintiff. Id.

{¶ 22} If a plaintiff produces direct evidence of discrimination, she need not satisfy the four-part test for establishing a prima facie case using indirect evidence. *Rowan v. Lockheed Martin Energy Sys., Inc.* (C.A.6, 2004), 360 F.3d 544, 548. "[A]n employee who has presented direct evidence of improper motive does not bear the burden of disproving other possible * * * reasons for the adverse action. Rather, the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive." *Weigel v. Baptist Hosp. of E. Tennessee* (C.A.6, 2002), 302 F.3d 367, 382 (analyzing direct and indirect methods of proof in the context of retaliation claims), citing *Jacklyn v. Schering–Plough Healthcare Prods.* (C.A.6, 1999), 176 F.3d 921, 926.

{¶ 23} Direct evidence is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn,* 176 F.3d at 926. In all cases, the plaintiff "must prove a causal link or nexus between evidence of a discriminatory statement or conduct and the prohibited act of discrimination." *Byrnes v. LCI Communication Holdings Co.* (1996), 77 Ohio St.3d 125, 130, 672 N.E.2d 145. Explicit statements of discriminatory intent constitute such direct evidence of discrimination. See *Johnson v. Univ. of Cincinnati* (C.A.6, 2000), 215 F.3d 561, 577, fn. 2; *Wittman v. Akron,* Summit App. No. 21375, 2003-Ohio-5617, 2003 WL 22399742, at ¶ 16. Such statements are distinguished from harmless, stray remarks by the nexus between the improper motive and the decision-making process or personnel. Accordingly, courts consider (1) whether the comments were made by a decision maker; (2) whether the comments were related to the decision-making process; (3) whether they were more than vague, isolated, or ambiguous; and (4) whether they were proximate in time to the act of alleged discrimination. See *Peters v. Lincoln Elec. Co.* (C.A.6, 2002), 285 F.3d 456, 477–478, citing *Cooley v. Carmike Cinemas, Inc.* (C.A.6, 1994), 25 F.3d 1325.

{¶ 24} As direct evidence of discrimination, appellant points to two comments made by Judge Donnelly in the context of his meeting with the female magistrates in 1998. Specifically, appellant maintains that in response to the magistrates' inquiry about the wage disparity, Judge Donnelly stated that he did not need to hire women. Appellant also asserts that Judge Donnelly stated in explanation that he relied on the men to do the important work of the court. Other witnesses agreed that similar comments were made, but disagree regarding the context in which the statements occurred and their intended meaning.

{¶ 25} Appellant alleges that these comments evidence blatant gender bias in connection with wages and are sufficient in themselves to satisfy her burden of establishing a prima facie case of discrimination. Appellees dispute the import of these statements, maintaining that Judge Donnelly's actual view of women is borne out by a long record of hiring females in general. They argue that when Judge Donnelly referenced giving the important work of the court to the men, he actually meant that he relied on the front office magistrates, four of whom, at that time, were male. Appellees also maintain that, regardless, these comments are not direct evidence of discrimination.[2]

{¶ 26} These statements must be viewed in a light most favorable to appellant. Considering the four factors outlined above, we are compelled to agree that reasonable minds could conclude that appellant has produced direct evidence of discrimination. The comments were made by the individual who held responsibility for appointing magistrates and for determining their compensation during a meeting convened for the purpose of discussing wage disparities among male and female magistrates. The comments were directed to four employees, including appellant, after the magistrates presented Judge Donnelly with the wage-study results and requested an explanation. Viewing these comments in the light most favorable to appellant as the nonmoving party, it requires no inference to conclude that these comments reveal discriminatory animus, and the nexus between the comments and the alleged acts of discrimination is not insignificant. At minimum, therefore, we conclude that there is an issue of fact regarding the statements that were made and the immediate context in which they occurred.

{¶ 27} "In direct evidence cases, once a plaintiff shows that the prohibited classification played a motivating part in the employment decision, the burden of both production and persuasion shifts to the employer" to prove that it would have made the employment decision in the absence of any discriminatory motivation. *Chang*, 480 F.Supp.2d at 1013. Accordingly, appellees maintain that even if appellant had met her burden of setting forth a prima facie case of discrimination, summary judgment was appropriate because they have met their burden of demonstrating that her wage level would have been the same regardless of any possible discriminatory animus.

{¶ 28} Appellees' proffered justification for the salary differential between appellant and her male colleagues is twofold. With respect to magistrates in

---

2. This assertion alone, however, is not enough to defeat appellant's claim on summary judgment. Comments that may not constitute direct evidence of discrimination may, nevertheless, create issues of fact with respect to circumstantial evidence of discriminatory intent. See, e.g., *Brown v. Packaging Corp. of Am.* (C.A.6 2003), 338 F.3d 586, 589–590.

general, appellees maintain that salaries were determined based on the professional experience of the magistrates and the relative levels of responsibility among the various probate court departments. With respect to appellant particularly, appellees maintain that her lower salary reflects a personally low level of job performance. Appellees' assertions supported by documentary evidence might have established these facts beyond dispute. Due to a history of regrettably minimalist supervisory employment practices,[3] however, the record is barren of evidence apart from the assertions of Judge Donnelly and Magistrate Polito to this effect. These assertions do not establish that appellees would have taken the same action in the absence of discriminatory motive. They do, however, create a genuine issue of material fact that precludes summary judgment.

{¶ 29} In conclusion, appellant's assignment of error is overruled with respect to her claims arising under R.C. 4111.17. Her assignment of error is sustained with respect to her claims arising under R.C. Chapter 4112. The judgment of the trial court is affirmed in part and reversed in part, and this cause is remanded to the trial court for further proceedings consistent with this opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

MOORE and DICKINSON, JJ.,* concur.

SLABY, J.,** concurs in part and dissents in part.

SLABY, J., concurring in part and dissenting in part.

{¶ 30} I concur with the majority's determination that appellant is not a covered employee within the meaning of R.C. 4111.01(D) and that the trial court properly granted summary judgment to appellees on her claim under the Ohio Fair Minimum Wage Standards Act. I respectfully dissent, however, with respect to appellant's sex-discrimination claim under R.C. Chapter 4112. I would affirm the judgment of the trial court in its totality because the comments upon which appellant relies for her prima facie case constitute indirect evidence, at best, and her claims fail under the burden-shifting framework set forth in

---

**3.** The record demonstrates that there are no job descriptions for magistrates, no written description of the work performed by the various departments, and no protocol for determining magistrate salaries. Employees are not evaluated, and the court does not produce written documentation of performance concerns.

* Sitting by assignment: Judges of the Ninth District Court of Appeals.

** Sitting by assignment: Judge of the Ninth District Court of Appeals.

*McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668.

{¶ 31} Comments by a decision maker may, in rare circumstances, constitute direct evidence of discrimination, but such comments must be truly unequivocal— " 'clear, pertinent, and directly related to decision-making personnel or processes.' " *Klaus v. Hilb, Rogal & Hamilton Co. of Ohio* (S.D.Ohio 2006), 437 F.Supp.2d 706, 725, quoting *Dobbs–Weinstein v. Vanderbilt Univ.* (M.D.Tenn. 1998), 1 F.Supp.2d 783, 798. Comments that are considered direct evidence of discrimination "will be similar to an employer telling its employee, 'I fired you because you are female.' " *Johannes v. Monday Community Corr. Inst.* (S.D.Ohio 2006), 434 F.Supp.2d 509, 514–515, quoting *Smith v. Chrysler Corp.* (C.A.6, 1998), 155 F.3d 799, 805. Statements of personal opinion, even if offensive or biased, are not direct evidence of discrimination. *Hall v. United States Dept. of Labor, Admin. Rev. Bd.* (C.A.10, 2007), 476 F.3d 847, 855. The fact that a remark is inappropriate or suggests discriminatory animus does not necessarily indicate that it is direct evidence of discrimination. *Dunnom v. Bennett* (S.D.Ohio 2003), 290 F.Supp.2d 860, 868 (concluding that a supervisor's statement to the effect that "women did not belong" was not direct evidence of discrimination).

{¶ 32} The connection between the comments and the act of discrimination must be absolutely clear, requiring no inference or presumption. *Vasquez v. Cty. of Los Angeles* (C.A.9, 2003), 349 F.3d 634, 640; *Johannes*, 434 F.Supp.2d at 514. " '[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of' some impermissible factor, constitute direct evidence of discrimination. If the alleged statement suggests, but does not prove, a discriminatory motive, then it is circumstantial evidence." (Internal citations omitted.) *Wilson v. B/E Aerospace, Inc.* (C.A.11, 2004), 376 F.3d 1079, 1086, quoting *Rojas v. Florida* (C.A.11, 2002), 285 F.3d 1339, 1342, fn. 2.

{¶ 33} The comments allegedly made by Judge Donnelly are arguably offensive and could even indicate a measure of bias. But they are not direct evidence of discrimination, and appellant cannot rely on them to avoid summary judgment by manufacturing an issue of fact. See *Hopson v. DaimlerChrysler Corp.* (C.A.6, 2002), 306 F.3d 427, 433. She must therefore proceed under the alternative burden-shifting analysis of *McDonnell Douglas*.

{¶ 34} Even assuming that appellant can establish the first three elements of a prima facie case, I would conclude that summary judgment was properly granted to appellees because appellant cannot establish the fourth: that she was treated less favorably than a similarly situated male magistrate. See *Barnett v. Dept. of Veterans Affairs* (C.A.6, 1998), 153 F.3d 338, 341. While appellant need not identify a male magistrate with whom she is similarly situated in every respect,

she must identify those with whom she is similarly situated in every relevant respect. *Kroh v. Continental Gen. Tire, Inc.* (2001), 92 Ohio St.3d 30, 32, 748 N.E.2d 36, citing *Ercegovich v. Goodyear Tire & Rubber Co.* (C.A.6, 1998), 154 F.3d 344, 353. There must be "enough common factors between a plaintiff and a comparator—and few enough confounding ones—to allow for a meaningful comparison in order to divine whether discrimination was at play." *Barricks v. Eli Lilly & Co.* (C.A.7, 2007), 481 F.3d 556, 560.

{¶ 35} Appellant does not like her salary. She does not like it relative to any other magistrate, male or female, and she believes that all magistrates should be earning "pretty much the same" salary regardless of the duties that they perform. The record is clear, however, that there are distinctions of experience and levels of responsibility between appellant and her colleagues. Considering these facts, I would conclude that appellant has not met her prima facie burden of proving that a similarly situated male employee has received more favorable treatment than she.

{¶ 36} I would affirm the judgment of the trial court in its entirety.