**CARL GREENE, Appellant/Plaintiff**

**v.**

**VIRGIN ISLANDS WATER AND POWER AUTHORITY, AND
ALBERTO BRUNO-VEGA, Appellees/Defendants**

S. Ct. Civil No. 2016-0048

Supreme Court of the Virgin Islands

July 28, 2017

728

LEE J. ROHN, ESQ., RHEA LAWRENCE, ESQ., Law Officers of Lee J. Rohn and Associates, LLC, St. Croix, USVI, *Attorneys for Appellant*.

SIMONE R. D. FRANCIS, ESQ., Ogletree, Deakins, Nash, Smoak & Stewart, LLC, St. Thomas, USVI, *Attorney for Appellees*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

### (July 28, 2017)

CABRET, *Associate Justice*. Carl Greene appeals the Superior Court's August 12, 2016 memorandum opinion and order, which granted summary judgment against Greene on all counts of his complaint, dismissing them with prejudice. Because Greene's arguments on appeal are waived and are otherwise unpersuasive, we affirm the Superior Court's ruling.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Virgin Islands Water and Power Authority ("WAPA") hired Greene in May of 1990, and by September of 2001, Greene had become the highest-ranking employee in his department. However, after a December 13, 2004 investigation conducted by the Virgin Islands Office of the Inspector General revealed that Greene was allegedly responsible for tampering with his own residential electrical meter, WAPA commenced disciplinary proceedings against Greene, and after several hearings, terminated him in April of 2005 for violating provisions of WAPA's Personnel Policies and Procedures Manual.

On January 24, 2006, Greene sued WAPA and its executive director, Alberto Bruno-Vega, in the District Court of the Virgin Islands, alleging that his termination violated various provisions of federal and territorial statutory law, and the United States Constitution. He also filed territorial common law claims for abuse of process and malicious prosecution.

The Office of the Inspector General forwarded the results of its investigation to the Virgin Islands Department of Justice. On July 21, 2006, approximately one-and-a-half years after the Office of the Inspector General concluded its investigation, the Department of Justice charged Greene with buying and receiving stolen property in violation of section

2101 of title 14 of the Virgin Islands Code. The Superior Court dismissed the Government's case against Greene in May of 2007.

In January of 2010, WAPA and Bruno-Vega each moved for summary judgment on all counts of Greene's complaint. On July 22, 2011, the District Court granted WAPA and Bruno-Vega's motions in substantial part, allowing only portions of Greene's claim under Title VII of the Civil Rights Act of 1964 against WAPA and Greene's malicious prosecution and abuse of process claims against both WAPA and Bruno-Vega to proceed.[1] WAPA and Bruno-Vega moved for reconsideration of the District Court's decision to the extent that it denied their summary judgment motions. The District Court denied each motion, noting that the "factual record pertaining to [Greene's abuse of process and malicious prosecution claims] is hotly disputed."

However, upon review of the parties' pretrial memoranda, the District Court questioned whether Greene had stated a prima facie claim for relief under Title VII, and invited WAPA to file another summary judgment motion on that issue. WAPA accepted the District Court's invitation, and after receiving the parties' briefs, the District Court granted summary judgment in WAPA's favor on the remaining portions of Greene's federal claims on May 22, 2013.

Having dismissed Greene's remaining federal claims, the District Court declined to exercise supplemental jurisdiction over Greene's remaining territorial claims of malicious prosecution and abuse of process, as permitted under section 1367 of title 28 of the United States Code. The District Court dismissed those claims without prejudice, entitling Greene to refile his territorial law claims in the Superior Court if he chose.

Greene then elected to pursue his territorial law claims in the Superior Court, and on June 25, 2013, he filed a two-count complaint against WAPA and Bruno-Vega, alleging malicious prosecution and abuse of process. Although represented by the same attorney, WAPA and Bruno-Vega answered Greene's complaint separately. On July 7, 2014, WAPA

---

[1] The District Court also declined to dismiss count eleven of Greene's complaint with respect to Bruno-Vega, which purported to state a claim for punitive damages. As we have repeatedly recognized, a claim for punitive damages is not an independent cause of action in this jurisdiction. *See, e.g., Bertrand v. Mystic Granite & Marble, Inc.*, 63 V.I. 772, 783 (V.I. 2015) (citing *Molloy v. Indep. Blue Cross*, 56 V.I. 155, 176 n.5 (V.I. 2012)).

filed a "Statement Noting Death of Party" pursuant to Federal Rule of Civil Procedure 25, notifying the Superior Court that Bruno-Vega passed away on June 13, 2014. Greene did not elect to pursue his claims against the personal representative of Bruno-Vega's estate, leaving WAPA as the only remaining defendant in Greene's Superior Court action.[2]

On August 4, 2014, WAPA moved for summary judgment on both counts of Greene's complaint, and on September 26, 2014, Greene filed an untimely response to WAPA's summary judgment motion.[3]

In his response in opposition, Greene did not address WAPA's statement of undisputed material facts, or WAPA's argument that it was entitled to judgment as a matter of law on Greene's malicious prosecution and abuse of process claims. Greene explicitly stated that he "decline[d] to expend time and money responding to [WAPA's] improperly filed Statement of Facts until Court ordered to do so." Rather, Greene took the position that the District Court's July 22, 2011 order denying WAPA and Bruno-Vega's motion for summary judgment collaterally estopped WAPA from moving for summary judgment on Greene's malicious prosecution and abuse-of-process claims before the Superior Court, and that the District Court's denial of summary judgment constituted the law of the case to which the Superior Court was bound to adhere. Greene also took the position that, if the Superior Court determined that neither collateral estoppel nor the law-of-the-case doctrine precluded WAPA's motion, he should receive an additional ten days to respond to WAPA's motion. WAPA filed a reply to Greene's response in opposition on October 10, 2014.

---

[2] Section 78 of title 5 of the Virgin Islands Code provides that, "[i]n case of the death . . . of a party, the court may at any time within two years thereafter, on motion, allow the action to be continued by or against his personal representatives or successor in interest." Greene filed no such motion with the Superior Court.

[3] On August 21, 2014, Greene filed a "Notice of Rule 56.1 Extension of Time." Greene filed a second "Notice of Rule 56.1 Extension of Time" on September 3, 2014, which according to WAPA, recited that the due date for his response to WAPA's summary judgment motion was extended until September 23, 2014. Instead of filing his response in opposition to WAPA's summary judgment motion on September 23, 2014, Greene filed a "Motion for Brief 2-Day Extension of Time" with the Superior Court. According to WAPA, this motion "asked the [Superior] Court to allow Greene 'up to and including September 25, 2014' to file a response" to WAPA's summary judgment motion. The Superior Court did not rule on Greene's motion for a two-day extension of time, but Greene nonetheless failed to file his response in opposition by September 25, 2014. Instead, Greene filed his response in opposition one day later, on September 26, 2014.

By order entered August 12, 2016, the Superior Court granted WAPA's summary judgment motion, and dismissed Greene's claims with respect to both WAPA and Bruno-Vega. *Greene v. V.I. Water & Power Auth.*, 65 V.I. 67, 70 (V.I. Super. Ct. 2016). The Superior Court first determined that collateral estoppel did not bar WAPA from seeking summary judgment in this proceeding because collateral estoppel requires a final judgment on the merits, and the District Court's July 22, 2011 order denying WAPA and Bruno-Vega's summary judgment motions did not constitute a final decision on the merits of Greene's case. *Id.* at 75. The Superior Court then determined that the law-of-the-case doctrine also did not bar WAPA's summary judgment motion in Greene's Superior Court case because the denial of summary judgment "does not establish any law or identify a rule of law that would govern the remainder of the case," and consequently, that the District Court's denial of WAPA's summary judgment motion "was simply a determination that WAPA, at that time, failed to establish [the absence of] a genuine issue as to a material fact." *Id.* at 78 (citing *Bellot v. Cardow, Inc.*, Case No. ST-2012-CV-297, 2014 V.I. LEXIS 64, at *4 (V.I. Super. Ct. 2014)). The Superior Court then turned to the merits of WAPA's motion. After determining that WAPA carried its burden by producing evidence that there was no genuine dispute of material fact with respect to Greene's abuse of process and malicious prosecution claims, it concluded that Greene failed to carry his burden of demonstrating the existence of genuine disputes of material fact with respect to both claims. *Id.* at 78-83. The Superior Court also rejected Greene's request for an additional ten days to respond to the merits of WAPA's motion, concluding that nothing prevented Greene from presenting alternative arguments and addressing the merits of WAPA's motion, and that Greene's request "would do nothing more than encourage piecemeal litigation resulting in a waste of judicial resources." *Id.* at 81. Accordingly, the Superior Court entered summary judgment in WAPA's favor on both counts of Greene's complaint.

The Superior Court also granted summary judgment for Bruno-Vega. The court reasoned that Greene sued Bruno-Vega in his official capacity, and that a suit against an officer in his official capacity is treated as a suit against the government entity itself. *Id.* at 83 n.12 (citing *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 581 (3d Cir. 2004)). The Superior Court did not address the fact that, despite Bruno-Vega's death, Greene filed no indication that he would continue his

suit against the personal representative of Greene's estate within two years, as required by section 78 of title 5. *See supra* n.2.

Greene filed a timely notice of appeal on September 9, 2016.

## II. JURISDICTION

We have jurisdiction over all appeals arising from final judgments, final decrees, and final orders of the Superior Court. V.I. CODE ANN. tit. 4, § 32(a). An order granting summary judgment and dismissing all remaining claims constitutes a final order within the meaning of section 32(a). *See, e.g., United Corp. v. Hamed*, 64 V.I. 297, 302 (V.I. 2016). Since the Superior Court's August 12, 2016 order dismissed all counts of Greene's complaint with respect to all defendants, it constitutes a final order over which we have jurisdiction.

## III. DISCUSSION

Greene argues that the Superior Court erred by failing to apply the law-of-the-case doctrine, and by refusing to allow Greene to file a substantive response to WAPA's summary judgment motion. Greene analogizes the Superior Court's decision to grant summary judgment to a decision to dismiss a case for failure to prosecute, and contends that we should adopt the six factors articulated in *Halliday v. Footlocker Specialty, Inc.*, 53 V.I. 505 (V.I. 2010) and require the Superior Court to apply those factors "to all discretionary decisions . . . that effectively result in a merits dismissal for non-merits reasons." We address each argument in turn

### A. Law of the Case

We have previously explained that, "[u]nder the law-of-the-case doctrine, 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.' " *Hodge v. Bluebeard's Castle, Inc.*, 62 V.I. 671, 688 (V.I. 2015) (quoting *Pepper v. United States*, 562 U.S. 476, 506, 131 S. Ct. 1229, 179 L. Ed. 2d 196 (2011)). This doctrine "directs a court's discretion, [but] it does not limit a tribunal's power," *Arizona v. California*, 460 U.S. 605, 618, 103 S. Ct. 1382, 75 L. Ed. 2d 318 (1983), yet Greene contends that the law-of-the-case doctrine precluded the Superior Court from granting summary judgment in WAPA's favor because the District Court previously denied WAPA's motion for summary judgment with respect to

Greene's malicious prosecution and abuse-of-process claims. Greene's argument rests on the proposition that an order denying a summary judgment motion establishes the "law of the case," effectively precluding a trial court from reconsidering a previous denial of a summary judgment motion. The sole authority cited by Greene in support of this proposition is our decision in *Hodge*.

■ In *V.I. Taxi Ass'n v. V.I. Port Auth.*, 67 V.I. 643 (V.I. 2017), this Court reviewed the law-of-the-case doctrine in detail and, addressing the unanswered question in *Hodge*, conducted the analysis mandated by *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (V.I. 2011). Pursuant to that analysis, the Court concluded that this common law doctrine is the soundest rule of law for the Virgin Islands. *V.I. Taxi Ass'n*, 67 V.I. 643, 668-672. However, Greene's argument predicated on this doctrine fails in the present case, because a trial court order denying a summary judgment motion does not establish the law of the case, since such an order is an interlocutory order that remains open for reconsideration by the trial court. *See Bethlehem Steel Export Corp. v. Redondo Constr. Corp.*, 140 F.3d 319, 321 (1st Cir. 1998); *accord Food Serv. Distribs., Inc. v. Barber*, 429 So. 2d 1025, 1027 (Ala. 1983) (rejecting the argument that a denial of a summary judgment motion constitutes the law of the case that precludes a trial court from entertaining a subsequent summary judgment motion); *Hayes v. Xerox Corp.*, 718 P.2d 929, 934 (Alaska 1986) (concluding that the denial of a summary judgment motion did not constitute the law of the case); *Farmer in the Dell Enters., Inc. v. Farmers Mut. Ins. Co.*, 514 A.2d 1097, 1099 (Del. 1986) (concluding that the denial of a summary judgment motion did not constitute the law of the case because it only produced "an unresolved issue of material fact"); *Kumar v. D.C. Water & Sewer Auth.*, 25 A.3d 9, 14 (D.C. 2011) ("[W]e have long held that the denial of a motion for summary judgment . . . is not 'sufficiently final' to establish the law of the case." (citation omitted)); *Strom-Sell v. Council for Concerned Citizens, Inc.*, 1999 ND 132, 597 N.W.2d 414, 416-17 (1999) (rejecting the argument that the denial of a motion for summary judgment constitutes the law of the case, thereby precluding the court from considering a renewed summary judgment motion later in the proceedings); *Nationwide Prop. & Cas. Ins. Co. v. D.F. Pepper Constr., Inc.*, 59 A.3d 106, 110 n.3 (R.I. 2013) (" 'The denial of a motion for summary judgment merely determines that a fact issue is involved, and does not even establish the law of the case.' " (quoting

*Rhode Island Public Telecomms. Auth. v. Russell*, 914 A.2d 984, 991 (R.I. 2007))); *Ballenger v. Bowen*, 313 S.C. 476, 443 S.E.2d 379, 380 (1994) ("The denial of summary judgment does not establish the law of the case, and issues raised in the motion may be raised again later in the proceedings[.]"); *Converse v. Town of Charleston*, 158 Vt. 166, 605 A.2d 535, 537 (1992) (concluding that a trial judge's denial of a summary judgment motion "did not rule on the merits of the issue, and his rulings did not create law of the case"); *Hayes v. Ornick*, No. 12-0285, 2013 W. Va. LEXIS 209, at *7 (W. Va. Mar. 12, 2013) (concluding that earlier denials of cross motions for summary judgment did not constitute the law of the case); *Holzinger v. Prudential Ins. Co.*, 222 Wis. 456, 269 N.W. 306, 308 (1936) (rejecting the argument that the trial court's denial of a summary judgment motion constituted the law of the case (citations omitted)).[4] Consequently, the District Court's ruling on WAPA's summary judgment motion would not constitute the law of the case with respect to Greene's Superior Court action. *See Island Tile & Marble,*

---

[4] This analysis assumes, for the sake of argument, that Greene's District Court case and his Superior Court case constitute the "same case" under the law-of-the-case doctrine. There is some authority that the decisions of a federal district court do not constitute the law of the case with respect to subsequent state-court proceedings. *See, e.g., Landry v. Thibaut*, 523 So. 2d 1370, 1375 & n.3 (La. Ct. App. 1988) (rejecting the argument that a federal court's judgment constitutes the law of the case with respect to state law causes of action, where the federal court "relegated [the state law claims] to the state courts of Louisiana"); *Birch v. Cuyahoga Cnty. Probate Ct.*, 173 Ohio App. 3d 696, 2007 Ohio 6189, 880 N.E.2d 132, 138 (2007) (concluding that the Sixth Circuit's reversal of an appellant's claim of sex discrimination under the Ohio Civil Rights Act did not prevent Ohio courts from entertaining a subsequent summary judgment motion with respect to that claim); *Deere & Co. v. First Nat'l Bank of Clarksdale*, 12 So. 3d 516, 523 (Miss. 2009) (concluding that a federal district court's dismissal of a state law claim to enjoin garnishment for failure to state a claim did not constitute the law of the case in a state court action between the same parties); *Ayers v. Jackson Twp.*, 106 N.J. 557, 525 A.2d 287, 315 (1987) (affirming the trial court's conclusion that a federal court's decision in "a related case" did not constitute the law of the case in a state law proceeding); *Zinter Handling, Inc. v. General Elec. Co.*, 101 A.D.3d 1333, 956 N.Y.S.2d 626, 628 n.3 (2012) (rejecting the argument that federal court of appeals' dismissal of plaintiff's state law claims without prejudice constitute the law of the case for purposes of a subsequent state action); *Freer v. Mayer*, 223 A.D.2d 667, 637 N.Y.S.2d 425, 426 (1996) (concluding that a federal court's determination that questions of fact existed with respect to state law causes of action did not constitute the law of the case in a subsequent state law proceeding after the federal court declined to exercise jurisdiction over the state law causes of action). Nevertheless, we entertain the assumption that Greene's two actions constitute the "same case" in order to demonstrate that the law-of-the-case doctrine simply does not apply to the order at issue here.

*LLC v. Bertrand,* 57 V.I. 596, 616 (V.I. 2012) ("[A] 'trial court [is] free to reconsider and reverse [interlocutory orders] for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.' " (quoting *Zarnow v. City of Wichita Falls,* 614 F.3d 161, 171 (5th Cir. 2010)) (alterations in original)).

■ Nevertheless, because Greene fails to support his argument with citation to the appropriate legal authority — as evidenced by his failure to address the elements required by a *Banks* analysis — we consider his law-of-the-case argument waived.

## B. Extension of Time

■ Greene also argues that the Superior Court abused its discretion when it denied his request for a 10-day extension of time to file a substantive response to WAPA's summary judgment motion. In his opening brief, he claims that he "had good reasons to delay responding to the summary-judgment motion and there was no pending trial date." He further claims that "WAPA failed to show that it would be prejudiced" by the requested 10-day extension, and that the extension "would not have adversely impacted the proceedings." Greene did not present these arguments to the Superior Court — and does not support them with citation to legal authority in his brief — so they are waived for purposes of his appeal. *See* V.I. R. APP. P. 22(m) ("Issues that were . . . not raised or objected to before the Superior Court . . . or . . . are only adverted to in a perfunctory manner or unsupported by argument and citation to legal authority, are deemed waived for purposes of appeal.").

Even if not waived, Greene's arguments would not prevail. Superior Court Rule 10 governs extensions of time in the Superior Court. Under that rule, when an act must be done by a specified deadline and a party moves for an extension of that deadline after the deadline passes, the party must demonstrate that their failure to request such an extension before the expiration of that deadline was the product of excusable neglect. SUPER. CT. R. 10(a). WAPA moved for summary judgment on August 4, 2014. Greene filed his response in opposition on September 26, 2014, 50 days after WAPA's motion, which is well past the 20-day deadline imposed by the Superior Court under Local Rule of Civil Procedure 56.1 for

736

responding to such motions.[5] *See, e.g., McGary v. J.S. Carambola, L.L.P.,* Case No. SX-13-CV-289, 2016 V.I. LEXIS 166, at *6 n.4 (V.I. Super. Ct. Oct. 7, 2016) (citing LRCI 56.1); *Der Weer v. Hess Oil V.I. Corp.,* 64 V.I. 107, 125 (V.I. Super. Ct. 2016). Even though Greene filed two notices for extension of time pursuant to Local Rule of Civil Procedure 56.1 and a motion for a further two-day extension of time, Greene still failed to file his response in opposition by September 25, 2015 — the deadline that would have existed if the Superior Court had granted his motion for a two-day extension of time. Since Greene's response in opposition — and consequently, his request for an extension of time to file an additional opposition — was untimely, Superior Court Rule 10 obligated Greene to demonstrate excusable neglect in order to receive the requested extension of time. *See* SUPER. CT. R. 10(a)(2). Greene did not address the "excusable neglect" standard in his opposition to WAPA's summary judgment motion. Instead, Greene explained that he made a conscious decision not "to expend time and money responding to [WAPA's] improperly filed Statement of Facts" because he "should not have to expend time and resources on a matter that [h]as been litigated exhaustively for seven years." The Superior Court denied Greene's request for an extension of time, reasoning that "nothing prevent[ed] Greene from presenting alternative arguments and addressing the merits of WAPA's motion in its opposition," and because "[g]ranting Green's request would do nothing more than encourage piecemeal litigation resulting in a waste of judicial resources." We review the Superior Court's decision to deny a request for an extension of time for an abuse of discretion. *See Martinez v. Colombian Emeralds, Inc.,* 51 V.I. 174, 190

---

[5] Prior to the issuance of Promulgation Order 2017-0001, April 3, 2017, adopting the Virgin Islands Rules of Civil Procedure, which do not include Rule 56.1, and Promulgation Order 2017-0006, April 7, 2017, repealing numerous Superior Court Rules and amending Superior Court Rule 7, among other Rules, Local Rule of Civil Procedure 56.1 ostensibly applied to proceedings in the Superior Court through the operation of Superior Court Rule 7. Previously we have questioned whether the Superior Court's incorporation by reference of a Federal Rule of Civil Procedure violates the Revised Organic Act. *See Vanterpool v. Gov't of the V.I.,* 63 V.I. 563, 578-79 (V.I. 2015). But "we are not inclined to address the issue here, particularly without the benefit of briefing from the parties." *Ernest v. Morris,* 64 V.I. 627, 636 n.7 (V.I. 2016) (citing *Perez v. Ritz-Carlton (V.I.), Inc.,* 59 V.I. 522, 529 n.5 (V.I. 2013)). We continue to apply the former procedural rules on appeal because the final judgment in this case was entered before that date. *Blyden v. People,* 53 V.I. 637, 658 n.15 (V.I. 2010).

(V.I. 2009) (citing *Farrington v. Benjamin*, 100 F.R.D. 474, 20 V.I. 470, 473 (D.V.I. 1984)).

■ "[T]he determination of excusable neglect is at bottom an equitable one, where the court should take into account all relevant circumstances surrounding the omission . . . including . . . the danger of prejudice to the opposing party, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Fuller v. Browne*, 59 V.I. 948, 954 (V.I. 2013) (quoting *Brown v. People*, 49 V.I. 378, 383 (V.I. 2008)) (internal quotation marks and alterations omitted). Prejudice to the nonmoving party encompasses, among other things, the "loss of opportunity to present some material aspect of a case," "the expenditure of money or similar detrimental changes in position by one side in reliance on the action or inaction of the other," and the imposition of "additional trial preparation, and added expense[.]" *State ex rel. Sizemore v. United Physicians Ins. Risk Retention Grp.*, 56 S.W.3d 557, 568 (Tenn. 2001) (citations omitted). Any delay that affects the Superior Court's ability to manage its docket as a whole weighs against a finding of excusable neglect. *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 606-07 (7th Cir. 2006) (affirming the conclusion that no excusable neglect existed to justify a one- to three-day delay, and observing that "[t]he overriding principle at stake involves the [trial] court's ability to mitigate the scourge of litigation delays by setting deadlines to force parties and their attorneys to be diligent in prosecuting their causes of action") (citation and internal quotation marks omitted)); *Baptiste v. Rohn*, Civil Action No. 2013-0104, 2015 U.S. Dist. LEXIS 171159, at *13 (D.V.I. Dec. 23, 2015) (concluding that precedent of granting motions of extensions of time based on the fact that no trial date has been set "would quickly erode the Court's ability to manage its docket"). And delay entirely within the movant's control — such as when the movant makes a conscious decision to pursue one litigation strategy at the expense of another — does not support a finding of excusable neglect. *See, e.g., Eskridge v. Cook Cnty.*, 577 F.3d 806, 810 (7th Cir. 2009) (concluding that counsel's "deliberate, strategic choice" to dismiss and refile a lawsuit, along with counsel's misapprehension of the consequences of doing so, did not constitute excusable neglect that would justify relief under Federal Rule of Civil Procedure 60(b)); *Slaughter v. S. Talc Co.*, 919 F.2d 304, 307 (5th Cir. 1990) (concluding that appellants

did not demonstrate excusable neglect when they elected to file affidavits with the trial court out of time, because the appellants "made a tactical decision to withhold them").[6]

---

[6] *See also United States v. Chujoy*, 207 F. Supp. 3d 660, 665 (W.D. Va. 2016) ("In general, delay[s] caused by strategic decisions . . . are insufficient" to establish excusable neglect, as necessary for an extension of time under Federal Rule of Criminal Procedure 33 (citing *United States v. Boesen*, 599 F.3d 874, 876 (8th Cir. 2010))); *Belizaire v. RAV Investigative & Sec. Servs., Ltd.*, 310 F.R.D. 100, 104 (S.D.N.Y. 2015) (concluding that a strategic decision to default does not constitute excusable neglect for purposes of granting relief under Federal Rule of Civil Procedure 60(b) (citing *United States v. Erdoss*, 440 F.2d 1221, 1223 (2d Cir. 1971))); *Yeoman v. Ikea U.S.A. W., Inc.*, No. 11CV701-WQH BGS, 2014 U.S. Dist. LEXIS 37749, at *20 (S.D. Cal. Mar. 20, 2014) (the fact that the defendant "had complete control over the timing of [the filing of a summary judgment motion] and had all the relevant information to file the motion" weighed "against finding excusable neglect" for failing to timely file that motion); *Marine Travelift, Inc. v. Toby Sexton Tire Co.*, No. 08-C-601, 2009 U.S. Dist. LEXIS 70859, at *2 (E.D. Wis. Aug. 6, 2009) ("The problem with Defendant's argument is that it is premised on the notion that an about-face in legal strategy could be considered 'neglect.' [Federal Rule of Civil Procedure 6(b)] instead is designed to forgive inadvertence or carelessness, or in some cases it may excuse a plausible misinterpretation of the rules. . . . Nowhere is there any support for the idea that a purely strategic omission, followed by a change of mind, could constitute excusable neglect." (citations omitted)); *Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.*, 387 F. Supp. 2d 521, 526-27 (M.D.N.C. 2005) (concluding that a defendant failed to demonstrate excusable neglect for an untimely filing of an opposition brief because, among other reasons, "[c]ounsel made a strategic decision" to conduct limited discovery review in order to "save costs and energy"); *Bruce v. Cnty. of Rensselaer*, No. 02-CV-0847, 2003 U.S. Dist. LEXIS 19031, at *15 (N.D.N.Y. Oct. 20, 2003) (concluding that, since a "decision to forego filing the motion [for class certification] was a matter of litigation strategy, it was entirely reasonable for the Magistrate Judge to have denied the request for an extension of time" to file that motion); *DeLong Corp. v. Raymond Int'l Inc.*, No. 76-903, 1979 U.S. Dist. LEXIS 14449, at *20 (D.N.J. Feb. 14, 1979) (denying a request for an extension of time to file an appeal because the movant's attempt to enlarge the summary judgment record by moving for reargument constituted "a strategy decision rather than excusable neglect"); *In re Graham Bros. Constr., Inc.*, 451 B.R. 646, 650 (Bankr. S.D. Ga. 2011) ("[I]t is well established that where a party's actions are deliberate, the party's late filing cannot constitute excusable neglect." (quoting *Banco Latino Int'l v. Gomez-Lopez*, 310 B.R. 780, 785 (S.D. Fla. 2004))); *In re Suprema Specialties, Inc.*, 330 B.R. 40, 52-53 (S.D.N.Y. 2005) (concluding that the "strategic decision" to default "is by definition not excusable neglect that may entitle the movant to relief under Federal Rule of Civil Procedure 60(b)"); *S2 Global, Inc. v. Tactical Operational Support Servs., LLC*, 119 So. 3d 1280, 1284 (Fla. Dist. Ct. App. 2013) (denying a motion for extension of time because "[r]econsideration of tactical decisions and judgment calls does not constitute a basis for finding excusable neglect" that would justify such an extension); *Segaline v. Wash. State Dep't of Labor & Indus.*, 169 Wn.2d 467, 238 P.3d 1107, 1112 (2010) (affirming the denial of a motion to amend a complaint because the plaintiff's delay in adding parties was "due to a conscious decision, strategy or tactic," and therefore constituted inexcusable neglect (citation omitted)); *cf. Fuller*, 59 V.I. at 954 (explaining that "excusable neglect" and "good

Having considered "all relevant circumstances" surrounding Greene's failure to timely request an extension of time, we are not convinced that his delay was the product of excusable neglect. First, Greene's delay was wholly within his control. As he admitted in his opposition to WAPA's summary judgment motion, Greene deliberately chose not "to expend time and money responding to [WAPA's] improperly filed Statement of Facts" because he felt that he "should not have to expend time and resources on a matter that [h]as been litigated exhaustively for seven years." *See African Am. Voting Rights Legal Def. Fund, Inc. v. Villa*, 54 F.3d 1345, 1350 (8th Cir. 1995) (in ruling on a summary judgment motion, the trial court did not abuse its discretion in refusing to consider untimely materials because "tactical decisions do not amount to affirmative showings of excusable neglect" necessary for an extension of time under Federal Rule of Civil Procedure 6(b) (citation omitted)). Second, Greene's delay would impair the Superior Court's ability to manage its caseload by effectively allowing a litigant to dictate that the Superior Court resolve motions in a piecemeal manner, prolonging litigation. Greene's attempt to arrogate the Superior Court's authority to himself is untenable. *See Fulton v. Theradyne Corp.*, No. 06 C 1321, 2007 U.S. Dist. LEXIS 21947, at *10 (N.D. Ill. Mar. 12, 2007) ("[P]arties cannot dictate the scheduling of case matters to the court, which has an inherent power to manage the cases on its docket."). We agree with the Superior Court that one party's unilateral reservation of the right to supplement an opposition "would do nothing more than encourage piecemeal litigation resulting in a waste of judicial resources." *See V.I. Water & Power Auth. v. Sound Sols., LLC*, No. ST-14-CV-558, 2015 V.I. LEXIS 54, at *6 (V.I. Super. May 27, 2015) (rejecting plaintiff's motion for extension of time under Superior Court Rule 10 in part because "the [Superior] Court [had n]ever heard of a case where a party decided on its own that it could just 'reserve[ ] responding' without leave of the Court and then claim it was actually doing the Court

---

cause" are "essentially synonyms" (citing *Beachside Assocs., LLC v. Fishman*, 53 V.I. 700, 713 (V.I. 2010))); *In re Kirkland*, 86 F.3d 172, 176 (10th Cir. 1996) (concluding that plaintiffs failed to demonstrate good cause for an extension of time to serve a defendant under Federal Rule of Civil Procedure 4 because "plaintiffs' affidavits reveal that they waited, apparently for strategic reasons, until the perceived last possible moment to serve defendant"); *Tremper v. Air-Shields Inc.*, No. IP00-1080-C-B/S, 2001 U.S. Dist. LEXIS 13290, at *5 (S.D. Ind. Aug. 27, 2001) (a "strategic decision" to delay service did not constitute good cause for an extension of time under Federal Rule of Civil Procedure 4(m)).

a favor"). Moreover, the burden of responding to a summary judgment motion is well-worn, and Greene, who was represented by counsel, was aware that failure to produce "actual evidence, amounting to more than a scintilla," in support of his position could result in summary judgment against him. *Perez v. Ritz-Carlton (V.I.), Inc.*, 59 V.I. 522, 527-28 (V.I. 2013) (citations omitted). Greene's request is tantamount to a request that the party responding to a summary judgment motion be granted the opportunity to ignore this burden and discharge its obligation incrementally, solely for its own convenience. Finally, Greene's proposed delay would not only increase costs for WAPA — which bears the burden of replying to Greene's untimely filing — but would also protract litigation by forcing WAPA to wait for the Superior Court to address Greene's first opposition before it could respond to Greene's proposed second opposition. Consequently, even if we were to reach Greene's second argument, we would conclude that the Superior Court did not abuse its discretion in denying Greene's request for an extension of time because Greene, under circumstances wholly within his control, purported to dictate to the Superior Court how to manage its docket.

## C. *Halliday* Factors

■ Finally, Greene contends that this Court should require the Superior Court to apply the six *Halliday* factors to "all decisions . . . that effectively result in a merits dismissal for non-merits reasons." Greene does not support this contention with citation to legal authority, so his argument is waived for purposes of this appeal. *See* V.I. R. APP. P. 22(m) ("Issues that were . . . only averted to in a perfunctory manner or unsupported by argument and citation to legal authority, are deemed waived for purposes of appeal[.]").

Even if this argument were not waived, Greene's attempt to analogize *Halliday* to his case is wholly unpersuasive. In that case we reversed a Superior Court order dismissing a plaintiff's case for failure to prosecute because the Superior Court did not consider or weigh the six factors articulated in *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863 (3d Cir. 1984), to determine if the plaintiff's failure to prosecute should be sanctioned with dismissal. *See Halliday*, 53 V.I. at 510-13.[7] We

---

[7] The six factors that the Superior Court must consider when determining whether a plaintiff's failure to prosecute an action should be sanctioned by dismissal are: " '(1) the extent of

emphasized that the Superior Court was required to consider these factors because dismissal for failure to prosecute represents an "extreme sanction" that is only warranted "for the instances in which it is justly merited," *id.* at 510-11, such as in cases of " 'bad faith' or 'callous disregard' of responsibilities by a party or by the party's attorney." *Pollara v. Chateau St. Croix, LLC,* 58 V.I. 455, 469 (V.I. 2013) (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S. Ct. 2778, 49 L. Ed. 2d 747 (1976)).

■ But in the present litigation the Superior Court did not dismiss Greene's complaint as a sanction for failure to prosecute. Its decision was not premised on allegations of bad faith or callous disregard of responsibilities. Rather, the Superior Court dismissed Greene's complaint because Greene failed to carry his burden of responding to WAPA's summary judgment motion. As stated above, the burden of the party responding to a summary judgment motion is well-established: if the movant has made a showing that there are no genuine disputes of material fact, the responding party must introduce some evidence showing a genuine issue for trial. *Alexander v. Alexander,* 65 V.I. 372, 378 (V.I. 2016) (quoting *Perez,* 59 V.I. at 527-28). To carry this burden, "the nonmoving party may not rest on its allegations alone, but must present actual evidence, amounting to more than a scintilla," in support of its position. *Perez,* 59 V.I. at 527-28 (citations omitted). Greene was represented by counsel and knew that a failure to discharge this burden could result in summary judgment in WAPA's favor. But even with this knowledge, Greene still filed his response late, deliberately chose not to respond to the merits of WAPA's summary judgment motion, and assumed that the Superior Court would grant him an extension of time even though his response was late and did not address the excusable neglect standard at all. Unlike the circumstances in *Halliday,* where the Superior Court dismissed an action for failure to prosecute as a sanction for the untimely filing of a memorandum without providing notice that dismissal would result from the untimely filing, *see Halliday,* 53 V.I. at

the party's personal *responsibility;* (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith;* (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions;* and (6) the *meritoriousness* of the claim or defense.' " *Halliday,* 53 V.I. at 510 (quoting *Poulis,* 747 F.2d at 868) (emphasis in original).

509, Greene was on notice that his litigation strategy could ultimately result in summary judgment being entered against him. Moreover, Greene's argument that the Superior Court's ruling constituted "a merits dismissal for non-merits reasons" is unpersuasive, in light of the fact that the Superior Court analyzed both of Greene's causes of action in detail, along with the evidence submitted by WAPA in support of its motion, in order to conclude that WAPA had carried its burden. And as the Superior Court correctly observed: "[t]here was nothing preventing Greene from presenting alternative arguments and addressing the merits of WAPA's motion in his opposition."

 Moreover, requiring the Superior Court to apply the *Halliday* factors to every decision to dismiss a plaintiff's claims ignores the fact that the *Halliday* factors were crafted to address the specific circumstances where a plaintiff fails to diligently prosecute his or her claims. *See Poulis*, 747 F.2d at 866. The considerations that form the basis for the *Halliday* inquiry — such as a history of dilatory behavior or the effectiveness of sanctions other than dismissal — simply have no place in other circumstances, such as the well-established summary judgment framework at issue here. *See, e.g., Walters v. Walters*, 60 V.I. 768, 794 (V.I. 2014) ("Generally, summary judgment should be granted after an adequate period for discovery has passed if the record reflects that: (1) there are no genuine issues, (2) as to any material fact, and (3) the moving party is entitled to judgment as a matter of law." (citing *Burd v. Antilles Yachting Servs.*, 57 V.I. 354, 358 (V.I. 2012)) (footnote omitted)). Consequently, even if Greene had properly supported his argument with citation to legal authority, we would not be persuaded to impose such a burden on the Superior Court.

## IV. CONCLUSION

Greene's two arguments on appeal are both waived due to Greene's failure to cite legal authority supporting his position and his failure to present an "excusable neglect" argument to the Superior Court. If we were to reach the merits of Greene's law-of-the-case argument, we would find it meritless because a denial of summary judgment does not create the "law of the case." Similarly, if we were to reach the merits of Greene's argument that he was entitled to an extension of time, we would reject his argument because a conscious decision to pursue one litigation strategy at the expense of others does not constitute excusable neglect. Finally,

because the entry of summary judgment is not a sanction for a failure to prosecute a case, we are not persuaded that the Superior Court must apply the six *Halliday* factors before determining whether to enter summary judgment against a party. Accordingly, we affirm the Superior Court's August 12, 2016 memorandum opinion and order.